Geoffrey S. Kercsmar (#020528)
Gregory B. Collins (#023154)
Callie N. Parkinson (#028339)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001
(480) 421-1002 fax
gsk@kflawaz.com
gbc@kflawaz.com
cnp@kflawaz.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glacier Pool Coolers, LLC, an Arizona limited liability company; RAM Innovations, LLC, an Arizona limited liability company,<br><br>　　　Plaintiffs,<br><br>v.<br><br>200 Park, Inc. d/b/a ArctiChill, a South Carolina corporation,<br>　　　　　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT**<br><br><br>(Jury Trial Demanded) |

Plaintiffs Glacier Pool Coolers, LLC and RAM Innovations, LLC (collectively "Plaintiffs"), for their complaint against Defendant 200 Park, Inc. d/b/a ArctiChill ("ArctiChill"), allege as follows:

## NATURE OF ACTION

1.  This is a patent infringement action. Plaintiff Rick M. Argovitz ("Argovitz") is the sole inventor of the invention disclosed in U.S. Patent No. 7,624,589 B1 ("the '589 Patent"). A true and correct copy of the '589 Patent is attached as **Exhibit A**. The '589 Patent protects and covers a method for cooling pool water using evaporative cooling. Prior to Argovitz's invention, swimming pool cooling devices (in-

1. pool, refrigeration systems, or reverse heat exchange pumps) were expensive, cumbersome and complicated to install. And despite their extreme expense, most were only minimally effective. The '589 Patent discloses a method for installing an evaporative cooling tower that can be easily coupled with a pool pump (which every swimming pool already has), to employ evaporative cooling technology that conveniently and efficiently cools a swimming pool. Using Argovitz's invention as the means to employ the patented method, modified evaporative cooling towers can be purchased and installed to a home pool or commercial pool for a fraction of the cost of other pool cooling systems.

2. The '589 Patent provides Argovitz the exclusive right to employ the method of his invention. Argovitz assigned that right to Glacier Pool Coolers Partnership, which assigned the patent to RAM Innovations, LLC. RAM Innovations, LLC subsequently granted Glacier Pool Coolers, LLC ("Glacier") an exclusive license to use the '589 Patent. Argovitz was an officer and/or owner of all of the companies listed in this paragraph.

3. The invention has proven commercially successful; Argovitz owns and operates Glacier, which designs, sells and installs pool cooling systems for commercial and residential swimming pools utilizing the method disclosed in the '589 Patent. Glacier's swimming pool coolers are widely known in the industry and Glacier has installed its pool cooling systems to pools across the United States and internationally.

4. Defendant ArtiChill designs and sells cooling systems for commercial applications. Recently, ArtiChill began marketing and selling evaporative cooling pool products. With full notice of the '589 Patent and its direct and indirect infringement of the '589 Patent, ArctiChill sells swimming pool coolers in Arizona and elsewhere in the United States that employ the patented pool cooling method. As explained below, ArctiChill's pool cooling products are nearly identical to Glacier's pool cooling products. ArctiChill's products employ the patented pool cooling method.

5. The owner of the patent, RAM Innovations, LLC, and the exclusive licensee of the patented technology, Glacier, bring this action to enjoin ArctiChill from continuing to violate the '589 Patent and to recover a reasonable royalty and treble damages.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff Glacier Pool Coolers, LLC ("Glacier"), is an Arizona limited liability company; its principal place of business is located at PO Box 5198, Scottsdale, AZ 85261. The sole members of Glacier Pool Coolers, LLC are Rick and Mindy Argovitz (the "Argovitzes").

7. Plaintiff RAM Innovations, LLC ("RAM Innovations"), is an Arizona limited liability company; its principal place of business is 10476 E. Mission Lane, Scottsdale, AZ 85258. The sole members of RAM Innovations, LLC are the Argovitzes.

8. 200 Park, Inc. is a South Carolina corporation, with its principle place of business located in South Carolina at 200 Park Avenue, Newberry, SC 29108. 200 Park, Inc. does business as ArtiChill.

9. ArctiChill ships and sells products nationwide, including in Arizona.

10. ArctiChill advertises its products nationwide, including in Arizona.

11. The Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action is for patent infringement and arises under the patent laws of the United States, Title 35, Section 271 et seq. of the United States Code.

12. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiffs and ArctiChill are diverse in citizenship and the amount in controversy exceeds $75,000.

13. Venue is proper in this District under 28 U.S.C. §1391(b)-(c), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue with respect to ArctiChill is also proper in this district because ArctiChill is subject to personal jurisdiction here.

# FACTUAL ALLEGATIONS

**A.   Glacier**

14. In 2003, the Argovitzes resided in Houston, Texas.

15. While living in Houston, like many residents of hot climates, the Argovitzes attempted to use a swimming pool to escape the heat. They quickly discovered that the water was often too warm to provide any relief.

16. In late 2003, the Argovitzes began researching potential ways to economically cool a pool so the water would provide the desired relief during the hot summer months.

17. Through Argovitz's research and development, Argovitz designed a unique and novel pool cooling system implementing conventional evaporative cooling technology.

18. In addition to cooling the pool, the Glacier Pool Cooler has the added benefit of reducing the amount of pool chemicals needed by up to 28 percent.

19. Argovitz filed his patent application on September 20, 2004.

20. On December 1, 2009, the '589 Patent was duly and legally issued to Rick Argovitz.

21. Argovitz assigned the '589 Patent to Glacier Pool Coolers Partnership. Glacier Pool Coolers Partnership was a partnership between AquaChoice Corporation and RAM Innovations, a company owned by the Argovitzes. On June 9, 2008, AquaChoice Corporation assigned its interest in Glacier Pool Coolers Partnership to RAM Innovations.

22. Glacier Pool Coolers Partnership was wound up in 2011 and its assets, including the '589 Patent, were transferred to RAM Innovations. Ram Innovations subsequently granted Glacier Pool Coolers, LLC an exclusive license. At all relevant times, the patent has been owned by RAM Innovations and exclusively licensed to Glacier Pool Coolers, LLC.

23. Claim 1 of the '589 Patent protects a method and apparatus for cooling pools, in combination with a swimming pool having a swim basin with water therein, a suction line extending from the basic to a filtering system and a return line extending

from the filtering system to the basin, an apparatus for cooling water within the basin comprising:

    a. A hollow tower having an upper end, a lower end, and an interior;

    b. A motorized fan positioned at the upper end of said tower;

    c. A water distribution header positioned beneath said fan, said distribution header in fluid communication with said return line, said header having plurality of dispensing apertures thereon;

    d. A fill medium received within said tower interior and positioned beneath said header, said medium configured to atomize streams of water coming in contact therewith;

    e. A reservoir positioned beneath said medium, said reservoir in fluid communication with said basin whereby said fan pulls ambient air upwardly through said atomized streams of water to invoked evaporative cooling thereof allowing cooled water to be collected in said reservoir and redirected to said basin.

24. The Patent protects the innovative method from being copied by anyone, including Glacier's competitors.

25. Glacier manufactures a series of swimming pool cooling products, all of which utilize this patented method.

26. Glacier Pool Coolers are sold to individuals, resorts, and amusement parks around the world.

27. Glacier Pool Coolers are also sold to swimming pool equipment stores for retail sale to consumers.

28. With the benefit of Argovitz's invention, Glacier has become the leading swimming pool cooling company in the United States.

**B.    ArctiChill's Infringement**

29.    ArctiChill is large intentional corporation. Its website discloses that ArctiChill "manufactures modular, process, medical and specialty chillers, high-purity water systems, with pumping systems, free-cooling and heat recovery options."

30.    In late May 2014, Glacier discovered that ArctiChill has begun marketing and selling cooling systems for swimming pools.

31.    On May 29, 2014, Rick Argovitz received an email from Remy Baker with CES, one of Glacier's long-time retail customers in Florida. Ms. Baker forwarded Mr. Argovitz an email he received, which requested information on the Glacier Pool Cooler pumping system. A true and correct copy of this email correspondence is attached as **Exhibit B**.

32.    The email correspondence was sent from a man named "Tanner" in South Carolina and requested the brand name and specifications of the pump used in the Glacier Pool Cooler under the guise of being a consumer concerned about the quality of pump Glacier uses in its products. *See* Exhibit B.

33.    On May 30, 2014, Remy Baker and CES received a second email from "Tanner;" this time, he identified himself as Tanner Werts, Engineering Assistant for ArctiChill Pool Coolers. A true and correct copy of this email correspondence is attached as **Exhibit C.**

34.    In this email correspondence, Tanner Werts explained that he "understands that [CES] currently does business with [their] competitors, and [he] hope[ed] to change that." He also said that "all of [ArctiChill's] systems are very similar to the systems [CES] already carr[ies], the only difference will be the price." *See* Exhibit C.

35.    This email correspondence also provided CES with the recommended models for "common sized pools" and pricing for each model. *See* Exhibit C.

36.    Tanner Werts also provided CES with a copy of ArctiChill's Pool Cooler brochure. *See* Exhibit C; *see also* a true and correct copy of ArctiChill's brochure and model specification attached hereto as **Exhibit D**.

6

37. On June 3, 2014, Tanner Werts contacted Ryan Foster of Pool Supply Unlimited, another long-time retail customer of Glacier. A true and correct copy of this email correspondence is attached as **Exhibit E**.

38. The email read as follows: "If you currently do business with Glacier then you should know the basic concept of the way our pool coolers work. The evaporative system sits on the exterior of the pool and cools it about ten degrees as the water evaporates off the PVC fill. Our systems work almost identically, the business difference is that we are a much larger company, and can give you a better price." *See* **Exhibit E**.

39. This email correspondence also provided Pool Supply Unlimited with the recommended models for "common sized pools" and pricing for each model. *See* Exhibit E.

40. Pool Supply Unlimited owner Ryan Foster forwarded the email correspondence to Argovitz to notify him that Tanner Werts had contacted one of his employees. *See* Exhibit E.

41. After conducting additional research, the Argovitz discovered the inquiring individual, Tanner Werts (the Engineering Assistant) was the son of ArctiChill Vice President Barry Werts. At this time, Argovitz also learned that ArctiChill was selling swimming pool cooling systems that, when installed to a pool and with a pool pump (as ArctiChill intended), employed the patented method.

42. On June 4, 2014, Kenneth L. Tolar, Glacier's attorney, sent a demand letter to ArctiChill Vice President Barry Werts notifying him of Glacier's patent, providing him with a copy of the patent, and demanding that ArctiChill immediately discontinue use of, and refrain from future use of, the patented method without a license. A true and correct copy of this email correspondence is attached as **Exhibit F**.

43. On June 10, 2014, Mr. Werts responded by denying that ArctiChill was infringing on Glacier's patent. He claimed that ArctiChill's model did not use an integral pump and that his company had no intention of using an integral pump within the cooling tower basin in the future. A true and correct copy of this email correspondence is attached

as **Exhibit G**. The June 10, 2014 letter failed to acknowledge that the swimming pool cooling method disclosed in claim one of the '589 Patent is infringed even without the use of an internal pump.

44. Notwithstanding ArctiChill's appreciation of the value and scope of the Patent, ArctiChill has been, and continues to, manufacture and sell its Pool Coolers that when installed to a swimming pool as specifically intended by ArctiChill utilize Argovitz's novel and patented method.

45. In July 2014, through a third-party, Glacier obtained an ArctiChill Pool Cooler. The pool cooler was purchased by an Arizona company and shipped directly to Arizona by ArctiChill. A picture of the ArctiChill Pool Cooler appears on the left below, with a picture of Glacier's pool cooler on the right.

 

46.     The ArctiChill Pool Cooler's protective cover was removed. A picture of the pool cooler with the protective cover removed is below on the left with a diagram of the patented pool cooling method on the right, which is taken directly from the '589 Patent.



47.     The ArctiChill Pool Cooler was shipped with a manual. A copy of that manual is attached as **Exhibit H**. The manual explains that the ArctiChill Pool Cooler is—as its name would suggest—intended for one purpose: cooling swimming pools. On the last page of the manual, a diagram appears demonstrating how the ArctiChill Pool Cooler must be connected to a swimming pool to cool the pool. That diagram appears below.



48. The inspection of the ArctiChill Pool Cooler and its manual demonstrates that the ArctiChill Pool Cooler is intended to cool swimming pools using the patented method disclosed in the '589 Patent. The ArctiChill uses all of the same elements as the patented method and apparatus, including in relevant part: in combination with a swimming pool having a swim basin with water therein, a suction line extending from the basic to a filtering system and a return line extending from the filtering system to the basin, an apparatus for cooling water within the basin comprising of includes:

    a. A hollow tower having an upper end, a lower end, and an interior;

    b. A motorized fan positioned at the upper end of said tower;

    c. A water distribution header positioned beneath said fan, said distribution header in fluid communication with said return line, said header having plurality of dispensing apertures thereon;

    d. A fill medium received within said tower interior and positioned beneath said header, said medium configured to atomize streams of water coming in contact therewith;

    e. A reservoir positioned beneath said medium, said reservoir in fluid communication with said basin whereby said fan pulls ambient air upwardly through said atomized streams of water to invoked evaporative cooling thereof allowing cooled water to be collected in said reservoir and redirected to said basin.

49. ArctiChill has been on notice of its direct and indirect infringement of the '589 Patent since at least June 4, 2014. Upon information and belief, ArctiChill has actually had notice of the '589 Patent since before it began marketing and selling swimming pool cooling systems. Actual notice of the '589 Patent was provided on each and every Glacier Pool Cooler Glacier sells. Despite having notice of the '589 Patent, ArctiChill continues to market and sell pool cooling systems that when installed to a swimming pool employ the method disclosed in the '589 Patent. ArctiChill's conduct constitutes willful infringement of the '589 Patent.

50. The '589 Patent provides Plaintiffs the exclusive right to practice the patented method. Plaintiffs have exercised their exclusive right to practice and sell the invention. ArctiChill's conduct has caused irreparable harm to Plaintiffs and it will continue to cause irreparable harm unless and until enjoined. Of note, several Glacier customers have disclosed that they have been contacted by ArctiChill. With ArctiChill's improper competition in the market, Glacier's customers have questioned Glacier's exclusive right to employ the patented method and the cost of Glacier's products.

## **COUNT I – INFRINGEMENT OF THE PATENT**

51. Plaintiffs repeat and reallege each and every allegation set forth above, as if fully set forth herein.

52. This cause of action arises under the laws of the United States, Title 35, United States Code, in particular under 35 U.S.C. § 271(a).

53. The '589 Patent is valid and enforceable.

54. ArctiChill, acting through and by its respective officers and owners, has, without authority, consent, right or license, and in direct infringement of the Patent made, used, offered for sale, and/or sold a swimming pool cooler using the same method and apparatus protected by the '589 Patent.

55. Upon information and belief, in developing its ArctiChill Pool Cooler, ArctiChill tested its product prior to selling the product to customers. During product development and testing, ArctiChill necessarily practiced the patented method. Upon information and belief, ArctiChill's direct infringement of the '589 Patent extends beyond mere testing of its products.

56. ArctiChill has had notice of the Patent since at least June 4, 2014, when Glacier notified ArctiChill of the Patent and provided ArctiChill with a copy of the Patent. Actual notice of the '589 Patent was also provided on each and every Glacier Pool Cooler.

57. Despite receiving notice of the Patent, ArctiChill has refused to stop manufacturing and selling its infringing pool coolers.

58. ArctiChill's infringing conduct is therefore willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

59. Plaintiffs have no adequate remedy at law for the harm caused by ArctiChill's acts.

60. By reason of ArctiChill's acts complained of herein, Plaintiffs have suffered monetary damages in an amount that has not yet been determined, but upon information and belief, is substantially in excess of the sum or value of $75,000, exclusive of interest and costs.

61. Due to the intentional nature of ArctiChill's acts, this is an exceptional case in which Plaintiffs are entitled to treble damages, attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

62. Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to: an accounting by ArctiChill of funds comprising all revenues received through the commercial exploitation of the infringing pool coolers; the imposition of a constructive trust for the benefit of Plaintiffs for all such funds in the custody or control of ArctiChill; and to such other damages to which Plaintiffs may be determined to be entitled.

**COUNT II – INDUCEMENT OF PATENT INFRINGEMENT**

63. Plaintiffs repeat and reallege each and every allegation set forth above, as if fully set forth herein.

64. This cause of action arises under the Patent Laws of the United States, Title 35, United States Code, in particular under 35 U.S.C. § 271(b).

65. The Patent is valid and enforceable.

66. ArctiChill has actual knowledge of the '589 Patent. It has been aware of the patent since at least June 4, 2014. *See* Exhibits F and G. Actual notice of the '589 Patent was also provided on each and every Glacier Pool Cooler Glacier sells.

67. Further evidence of ArctiChill's knowledge of the '589 Patent is the fact that it has been sending solicitations to Glacier's customers through email

correspondence, claiming to sell a virtually "identical" product, just at a lower price. See Exhibits C and E.

68. Despite having notice of its indirect infringement of the Patent, ArctiChill has continued to sell its infringing Pool Cooler for use in residential and commercial swimming pools.

69. By manufacturing the infringing Pool Cooler, which uses the patented evaporative cooling method to cool residential and commercial swimming pools, ArctiChill indirectly infringes upon the Patent. ArctiChill induces its customers to directly infringe the '589 Patent. As ArctiChill's manual indicates, ArctiChill's Pool Cooler has one purpose: to cool swimming pools.

70. ArctiChill's infringing conduct is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

71. Plaintiffs have no adequate remedy at law for the harm caused by ArctiChill's acts.

72. By reason of ArctiChill's acts complained of herein, Plaintiffs have suffered monetary damages in an amount that has not yet been determined, but upon information and belief, is substantially in excess of the sum or value of $75,000, exclusive of interest and costs.

73. Due to the intentional nature of ArctiChill's acts, this is an exceptional case in which Plaintiffs are entitled to treble damages, attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

**COUNT III – CONTRIBUTORY PATENT INFRINGEMENT**

74. Plaintiffs repeat and reallege each and every allegation set forth above, as if fully set forth herein.

75. This cause of action arises under the Patent Laws of the United States, Title 35, United States Code, in particular under 35 U.S.C. § 271(c).

76. The Patent is valid and enforceable.

77. ArctiChill is liable for contributory infringement, pursuant to 35 U.S.C. § 271(c), in that ArctiChill has imported, made, or sold within the United States a component of a patented combination or composition, consisting of a material part of the invention, knowing the same to be especially made or adapted for use in the infringement of the Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

78. With knowledge of the Patent, ArctiChill has advertised its infringing pool coolers.

79. At a minimum, in contributory infringement of the Patent, ArctiChill has advertised and sold its ArctiChill Pool Coolers to swimming pool equipment stores.

80. By relying on their ArctiChill Pool Cooler to cool the swimming pools of its customers, ArctiChill indirectly infringes upon the Patent.

81. There are no substantial non-infringing uses for the ArctiChill Pool Cooler.

82. ArctiChill's infringing conduct is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

83. Plaintiffs have no adequate remedy at law for the harm caused by ArctiChill's acts.

84. By reason of ArctiChill's acts complained of herein, Plaintiffs have suffered monetary damages in an amount that has not yet been determined, but upon information and belief, is substantially in excess of the sum or value of $75,000, exclusive of interest and costs.

85. Due to the intentional nature of ArctiChill's acts, this is an exceptional case in which Plaintiffs are entitled to treble damages, attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

## **JURY TRIAL DEMAND**

1. Plaintiffs request a trial by jury on all aspects of the Complaint.

14

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Glacier Pool Coolers, LLC and RAM Innovations, LLC, pray for relief and judgment against Defendant ArctiChill as follows:

A. For a judicial determination and declaration that the '589 Patent is valid and enforceable;

B. For equitable relief in the form of a preliminary and permanent injunction issued against ArctiChill, its agents, officers, directors, employees, attorneys, successors and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of ArctiChill, or in active concert, participation, or combination with them, including customers and distributors, prohibiting ArctiChill from:

    i. continuing acts of infringement of the '589 Patent;

    ii. making, using, selling and/or importing Infringing Products, to include any colorable imitation thereof; and

    iii. otherwise infringing upon the '589 Patent.

C. A judicial determination and declaration that ArctiChill has infringed the '589 Patent under 35 U.S.C. § 271, and final judgment incorporating the same;

D. That an Order issue from this Court requiring ArctiChill, its officers, agents, servants and employees, to deliver up to this Court for destruction all articles and materials infringing upon Plaintiffs' rights and all materials for reproducing such Infringing Products;

E. That ArctiChill be required to file with the Court within thirty (30) days after entry of an injunctive order or final judgment a written statement under oath setting forth the manner in which ArctiChill has complied with the order or final judgment;

F. Directing ArctiChill to account for, and awarding to Plaintiffs, all gains and profits realized through, and damages caused by, ArctiChill's manufacture, production, distribution, circulation, sale, offering for sale, advertising, promotion or display of its Pool Cooler utilizing the patented evaporative cooling system, and ArctiChill's total profit

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

realized thereby, and that such award be trebled, pursuant to 15 U.S.C. §§ 1114 and 1117(a);

  G. Awarding Plaintiffs their damages sustained due to ArctiChill's infringement of the '589 Patent;

  H. In the alternative, ordering ArctiChill to pay Plaintiffs all profits, gains, and advantages ArctiChill has received or obtained from their unlawful conduct, in an amount to be determined at trial;

  I. In the alternative, that a reasonable royalty for ArctiChill's infringement be awarded to Plaintiffs pursuant to 35 U.S.C. § 284;

  J. That, due to ArctiChill's willful infringement of Plaintiffs' patent rights, ArctiChill be ordered to pay Plaintiffs' treble damages pursuant to 35 U.S.C. §284;

  K. That, due to ArctiChill's willful and flagrant disregard of Plaintiffs' patent rights, ArctiChill be ordered to pay Plaintiffs their reasonable attorneys' fees and experts' fees pursuant to 35 U.S.C. § 285;

  L. An award of the costs of this action, including pre- and post-judgment interest, pursuant to 35 U.S.C. § 284; and

  M. For such other and further relief as this Court deems necessary, just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 19th of August, 2014.

        KERCSMAR & FELTUS PLLC


        By *Gregory B. Collins*
          Geoffrey S. Kercsmar
          Gregory B. Collins
          Callie N. Parkinson
          7150 East Camelback Road
          Scottsdale, Arizona 85251
          *Attorneys for Plaintiffs*

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001